*Wood, J.
It will be seen that advantage was sought tó be [265 taken of tho supposed irregularity of these proceedings, on tho return day of tho writ, before special bail was perfected or the declaration filed. No rights, therefore, were waived by the plaintiffs in error, and the question is first presented, whether it is required of a plaintiff who brings a suit, to give himself a Christian name, or is it sufficient, if he describe himself by the initials thereof. Wo have looked into the numerous authorities cited by counsel, as well as such others as were within our reach, and the result is a perfect conviction, with the majority of the court, that the general analogies of tho law, both in England and in most of the United States, require a plaintiff to describe himself by his proper Christian, as well as surname. Names are the indicia by which persons, as well as things, are distinguished from each other, and the want of either the Christian or surname, as well as a misnomer, may be taken advantage of by plea in abatement, or by motion to discharge on common bail. No reason is perceived by us why the *266 rules, in this respect, should bo either abated or relaxed. It was very properly remarked, by Mr. Justice Eyre, that infinite mischief occurred, by the facilities of courts, in overlooking errors of form; that it encouraged carelessness, and placed ignorance too much upon a footing with knowledge amongst the profession.
But few eases, it is believed, can be found, where a plea in abatement would be sustained for’a misnomer, the want of an addition, or either Christian or surname, in the courts of Westminster, when a motion to discharge, on common bail, would not likewise, bo supported. It is true, in England, you can not now plead in abatement to the writ, though such plea was formerly sustainable. The defendant there is prohibited, by rule of court, from craving oyer of the process. The writ there forms no part of the record; but for a misnomer, or the want of proper Christian or surnames, of either plaintiffs or defendants, a plea in abatement, until recently, would have been sustained to the declaration. Tho law has, however, been changed, within a few years, by act of parliament, 266] and pleas *in abatement for misnomer are now abolished by the statute of 3 and 4 of Will. 4, cap. 42, sec. 11; and another remedy is provided. This statute enacts, that no plea in abatement, for a misnomer, etc., shall be allowed, where, but for the act, the same might have been pleaded; but, instead thereof, the defendant may apply to a judge for a summons against the plaintiff, and compel him to insert the proper name, and pay tho costs of the application. In Ohio, we have no statute on the subject, and the rule remains, as, at common law, it was borrowed from the jurisprudence of our ancestors. In the King v. Harrison, 8 Term, 508, it is said, it must be stated, with certainty, who are tho parties to the suit, and, therefore, a declaration by or against C. D. & Co. is not sufficient; and as the writ, in Ohio, forms a part of the record, and oyer may be had, the same objections apply to the process. In a recent case, Finch v. Cooken, 3 Dowl. 678, it was held that a misnomer of the defendant renders the bail bond void, and judgment on it was accordingly reversed.
Tho next question presented arises on the affidavit. Are its words, “in or about- the sum of §4,930,” sufficiently certain, as to the amount appearing to be due, or sworn to? The statute under which this suit was instituted, provides, that the affidavit shall state, “that there is a debt or demand justly due such creditor of $100, or upward, specifying, as nearly as may be, the nature and *267 amount thereof.” In what sum, under this affidavit, can the defendant legally be hold to bail? The law requires bail, in double the amount sworn to be duo. The sheriff, then, must take bail in twice the amount, of “ in or about” $4,930. To ascertain it, however, is beyond the power of mathematical calculation. “ In or about” defines no specific sum whatever. The precedents in Chitty, giving the form of the affidavit, all give a certain sum as necessary to be stated. $100 and upward, would be certain as to $100. The sheriff could hold to bail only in $200, though the plaintiff may recover to any extent he can prove the defendant’s liability. In the books of English practice, fromSelden and Tidd, to a ^modern edition of Chitty, we can not find a case where [267 an affidavit like the one in this case has been held sufficient. The statute of Geo. 1, amended by 5 Geo. 2, and afterward made perpetual, which required an affidavit to hold to bail, and under which the English practice grew up, is similar, in its provisions, to our own. In our opinion, this affidavit ought not to have been sustained.
The next inquiry in order is, whether the capias was defectivo and should have been quashed, or the defendants below discharged on filing common bail, because there was no indorsement upon it of the amount appearing due, or sworn to. This indorsement is required, by the act of 1831, to regulate the practice of the judicial courts, and is not repealed by the act of 1833, under which this capias was issued. The object of the act is readily perceivable, that the sheriff may know in what amount to demand bail, and the defendant, the sum demanded of him, that he may pay it without further embarrassment, vexation, and cost. But it is said the language of the act is merely directory. The same question was debated, in a comparatively recent case, before Taunton, Justice, under a rule of Hilary term, 2 Wm. 4, which required the amount of debt and cost to be indorsed on the process; and it was said, by the court, that to say the rule is directory and not compulsory, is to say, in other words, it means nothing, and that it must be considered an irregularity; that it waá a very important rule, and the object of it was to enable the delendant to pay debt and costs, before any unnecessary expense was incurred ; and the object of the rule would be avoided, if not held an irregularity. 1 Dowl. 383, cited in 3 Chitty’s Pr. 72; by Park, Justice, also, in Smith v. Crump, 1 Dowl. 119. The decisions of the English courts, on *268 t’nis subject, have been not always uniform, but occasionally con-‘¿ flicting. But the late adjudications, all of them, so far as can bo , ascertained, adhere to the language used by Taunton and Park, Justices, that such requisitions are compulsory. The practice of the English courts, for all such defects, is, on motion, to discharge on common ball, or to set aside the proceedings. 3 Chit. Pr. 170, et passim.
268] *There can, in our opinion, be no doubt, that the same rules should be applied in this state. The court of common pleas overruled the motions of the defendants below, when the motion to quash, set aside the proceedings, or discharge on common bail should, at least one of them, have been sustained.
We would also observe, that submitting to final judgment, in the common pleas, before any attempt was made to reverse the erroneous interlocutory orders made there, is not a waiver of any legal rights by the defendants below; for writs of certiorari are not allowed in Ohio, by the Supreme Court, until the cause is finally disposed of in the court below, and writs of error can only be issued after a final judgment.'
In the case at bar, we are unanimously of opinion the judgment of the common pleas should be reversed, and a majority of the' court, upon all the points made by the counsel for the plaintiffs in error, and with costs. ■ ,
Judgment reversed.